O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

DAVID LLOYD MARCUS,

              Plaintiff,

    v.

ABC SIGNATURE STUDIOS, INC.; KHALOBO INK SOCIETY; KENYA BARRIS; DOES 1-10.

              Defendants.

17-cv-00148-RSWL-AJWx

**ORDER Re: DEFENDANTS' MOTION TO DISMISS** [35] **AND MOTION TO STRIKE AND FOR SANCTIONS** [42]

Plaintiff David Lloyd Marcus ("Plaintiff") brought the instant Action against Defendants ABC Signature Studios, Inc. ("ABC"); Khalabo Ink Society ("Khalabo"); and Kenya Barris ("Barris") (collectively, "Defendants") alleging copyright infringement, unfair competition, and fraud.  Currently before the Court are Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("FRCP" or "Rule") 12(b)(6) ("Motion to Dismiss") [35] and Defendants' Motion to Strike the Complaint and for Sanctions

1

("Motion to Strike") [42].  Having reviewed all papers submitted pertaining to these Motions, the Court **NOW FINDS AND RULES AS FOLLOWS:** Defendants' Motion to Dismiss is **GRANTED without leave to amend** and Defendants' Motion to Strike and for Sanctions is **DENIED as MOOT.**

## I. BACKGROUND

### A. Factual Background

In February 2013, former Defendant Overbrook and ANA Alliance sponsored a script writing contest called "Search for America's Newest Screenwriter."  Compl. ¶ 9, ECF No. 1.  On March 20, 2013, Plaintiff submitted a script called *Across the Tracks* ("*Across the Tracks*" or "the Script") to the contest.  Id. ¶ 10.  In November 2014, Plaintiff submitted the Script to the United States Copyright Office and received the exclusive rights and privileges to the Script.  Id. ¶ 17.  Plaintiff alleges he never heard from the contest creators on the status of his submission.  Id. ¶ 12.

Plaintiff alleges that former Defendant Will Smith is the owner of former Defendant Overbrook, the sponsor of "Search for America's Newest Screenwriter."  Id. ¶ 4.  Plaintiff further alleges that Mr. Smith developed a close business relationship with Barris after working with Barris on various television projects.  Id. ¶¶ 15-16.

In the fall of 2014, ABC released a pilot called

*Black-ish*, created by Barris and produced by Khalabo.
Id. ¶ 18.  Plaintiff alleges *Black-ish* is virtually
identical to *Across the Tracks*, including the major
characters, thematic points, and plot turns.  Id.
¶¶ 18-19.  Subsequently, Plaintiff initiated an Action
in this Court against Defendants alleging copyright
infringement under the Copyright Act of 1976, unfair
competition under the Lanham Act of 1946, and fraud.

    1.  Summary of the Works

        a.  *Across the Tracks*

The Script begins with the Johnson family—Dave, his
wife, Keisha, and their children, Kimberly and Dave
Junior ("DJ")—driving up to their new home after
"leaving their old neighborhood and old friends that
looked and talked just like they do."  Defs.' Req. for
Jud. Not. ("RJN"), Ex. A at 8.  As the Johnsons pull
into their driveway, they notice their new neighbors, a
white couple, Tim and Katie Smith, doing yard work.
Id.  The Smiths greet the Johnsons, and the two
families have an awkward exchange as the Smiths try to
act stereotypically "black."  Id. at 9-10.  The
Johnsons go inside and discuss the Smiths' actions, and
instead of being offended, they note how the Smiths
were just trying to make the Johnsons feel welcome.
Id. at 13.

DJ meets the Smiths' son, Matty, while shooting
hoops in the Johnsons' backyard, and Dave invites Matty
and the rest of the Smiths over for a barbeque.  Id. at

15-16.

Tim and Katie take their efforts to appear stereotypically "black" even further when they arrive at the barbeque. "Tim is dressed like a gansta [sic] rapper, and Katie looking like a video girl, with her heels and lip gloss popping." Id. at 17. As the barbeque progresses, Tim and Katie both acknowledge how ridiculous they have been, attributing it to just wanting their new neighbors to feel welcome and prove that they were not prejudiced. Id. at 20. The Johnsons laugh off the situation, and both families agree to be themselves. Id. at 21.

The Smiths' other son, Kyle, joins the barbeque, and it quickly becomes clear that Kyle will become a love interest for the Johnsons' daughter, Kimberly. Id. at 18. While enjoying the barbeque, the families discover that Keisha will be starting as a new nurse manager at the hospital at which Katie works as a nurse making Keisha Katie's boss. Id. at 23-24.

The family is confronted by even more overt racism the following day. Matty invites DJ over to the Smiths' house for a sleepover. Id. at 24. That night, Matty's friend Chris tells DJ that DJ is only good at violent video games because "[y]ou know about guns right. You're from the hood aren't you." Id. at 28. After hearing that DJ's father owns a used car dealership, Chris declares that "blacks are good salesmen anyway they go from pimps to sales. They even

get to [wear] the same suit.  Hood skills pay off for you guys."  _Id._ at 28.

DJ quickly runs over to his house to tell his parents about the encounter.  _Id._ at 27.  Dave, while angry, uses it as a teaching moment for his son, emphasizing that "God expects us to do what we are supposed to do, and let him deal with those who offend us."  _Id._ at 29.  Tim and Chris' father, Eric, come over to apologize to the Johnsons.  _Id._ at 30.  Eric makes clear that his son's behavior was unacceptable, and the Script ends as Dave explains that there is a valuable lesson in owning up to when you are wrong and forgiving those who wrong you.  _Id._ at 31.

b.  *Black-ish*

The pilot episode of *Black-ish* opens with the main character, Andre Johnson, introducing his family—his wife, Rainbow ("Bow"), four children (teenagers, Andre Jr. and Zoey, and pre-teen twins, Jack and Diane), and his father, Pops.  Andre explains that while he grew up in the "hood," his and his wife's successes, including his work at an advertising agency and his wife's work as a doctor, have allowed him to raise his family in an upper-class neighborhood.

Having raised his family in a predominantly white area, Andre is concerned that his family may have assimilated too well to the white culture.  When Andre drops Andre Jr. off at school, Andre Jr. tells Andre that instead of playing basketball like his father,

Andre Jr. will be trying out for the field hockey team.
Additionally, Andre learns that Andre Jr.'s friends
call him "Andy" instead of Andre.  Andre Jr. also later
informs his family that he wants to have a bar mitzvah.

The pilot spends time at Andre's work, where he has
just been promoted to Senior Vice President, a title
reserved primarily for Andre's white co-workers.  When
Andre learns that he has been promoted to Senior Vice
President of his company's Urban Division, he is upset
that he has been put in charge of "black stuff."

Frustrated with work and his children, Andre makes
it his mission to ensure his family remains "black, not
black-ish," even going so far as to make Andre Jr.
participate in an African rite of passage ceremony.
Bow calls Andre out on his crazy behavior, and after a
discussion with his father, Andre discovers that he
must admit when he is wrong and find a way to make it
right.  Andre then accepts his position as Senior Vice
President of the Urban Division, making a well-received
presentation for a Los Angeles tourism account.  The
episode ends with Andre throwing a "bro mitzvah" for
Andre Jr. to make his son happy while still including
part of his culture that he thought his family was so
quickly losing.

**B.   Procedural Background**

On January 6, 2017, Plaintiff filed his Complaint
[1].  On April 26, 2017, the parties stipulated and
this Court granted Plaintiff leave to file an amended

6

complaint within five days of the Court's order and gave Defendants fourteen days to respond to the amended complaint [29]. Plaintiff did not file an amended complaint within the timeline prescribed.

On April 11, 2017, the parties filed a stipulation to dismiss Defendants Overbrook and Will Smith [25]. The Court dismissed Defendants Overbrook and Will Smith on April 20, 2017 [28].

On May 11, 2017, Plaintiff's counsel filed a Motion to Withdraw as Attorney [31] requesting to be relieved as counsel because of a disagreement that arose between counsel and Plaintiff which rendered counsel's ability to represent Plaintiff difficult. Mot. to Withdraw 3:12-16, ECF No. 31. After the Court granted the Motion to Withdraw [40] on June 7, 2017, the Court continued the hearing on the Motion to Dismiss to allow Plaintiff additional time to either retain new representation or prepare to proceed pro se. To date, Plaintiff has not retained new representation.

On May 22, 2017, Defendants filed the instant Motion to Dismiss [35], and on July 17, 2017, Defendants filed a Motion to Strike and for Sanctions [42]. Plaintiff's Oppositions to both the Motion to Dismiss and Motion to Strike were due on August 1, 2017; however, Plaintiff did not file any Oppositions. Defendants' Replies were due on August 8, 2017, and none were filed.

///

**II. DISCUSSION**

**A.  Legal Standard**

    1.  <u>Motion to Dismiss under Rule 12(b)(6)</u>

    Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted.  To survive a motion to dismiss on 12(b)(6) grounds, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)(internal quotation marks omitted).  Dismissal can be based on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990).

    In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007).  A court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party. <u>Klarfeld v. United States</u>, 944 F.2d 583, 585 (9th Cir. 1991).

    The question presented by a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff has alleged sufficient factual

grounds to support a plausible claim to relief, thereby
entitling the plaintiff to offer evidence in support of
its claim.  Iqbal, 556 U.S. at 678; Swierkiewicz v.
Sorema N.A., 534 U.S. 506, 511 (2002).  While a
complaint need not contain detailed factual
allegations, a plaintiff must provide more than "labels
and conclusions" or "a formulaic recitation of a cause
of action's elements."  Bell Atl. Corp. v. Twombly, 550
U.S. 544, 555 (2007)(internal citation omitted).
However, a complaint "should not be dismissed under
Rule 12(b)(6) 'unless it appears beyond doubt that the
plaintiff can prove no set of facts in support of his
claim which would entitle him to relief.'"  Balistreri,
901 F.2d at 699 (citing Conley v. Gibson, 355 U.S. 41,
45-46 (1957)).

 2.  Motion to Strike

  The Court may strike a pleading that contains "any
redundant, immaterial, impertinent, or scandalous
matter."  Fed. R. Civ. P. 12(f).  Matters are
"immaterial" if they have "no essential or important
relationship to the claim for relief or the defenses
being pleaded" and "impertinent" if they "do not
pertain, and are not necessary, to the issues in
question."  Fantasy, Inc. v. Fogerty, 984 F.2d 1524,
1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S.
517 (1994).  Matters are "scandalous" if they "cast a
cruelly derogatory light on a party or other person."
In re 2TheMart.com, Inc. Sec. Litig., 114 F. Supp. 2d

955, 965 (C.D. Cal. 2000).

**B.  Discussion**

    1.  <u>Defendants' Request for Judicial Notice</u>

    A court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Typically, however, in reviewing a Rule 12(b)(6) motion to dismiss, a court is generally "limited to the contents of the complaint."  <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001).  An exception to this general rule includes material "which is properly submitted as part of the complaint."  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001).  "Even if a document is not attached to the complaint, it may be incorporated by reference into a complaint if the plaintiff refers exclusively to the document or the document forms the basis of the plaintiff's claim."  <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).  The second exception to this rule includes matters of "public record."  <u>Lee</u>, 250 F.3d at 689; <u>see</u> <u>Cabell v. Zorro Prods.</u>, No. 5:15-cv-00771-EJD, 2017 U.S. Dist. LEXIS 82413, at *12 (N.D. Cal. May 30, 2017)(holding that in reviewing a motion to dismiss, courts "may also consider material subject to judicial notice").

    Defendants request the Court take judicial notice of the following materials: (1) a copy of the Script of

*Across the Tracks* from the United States Copyright Office, (2) a DVD copy of the pilot episode of *Black-ish*, (3) Plaintiff's proposed Amended Complaint, and (4) United States Census Bureau data identifying the top fifteen most popular last names in the United States. See RJN.

With regards to the copy of the *Across the Tracks* script, while Plaintiff did not attach the Script to the Complaint, the Complaint "refers exclusively to the document," and, in this copyright infringement suit, Plaintiff's copyrighted script "forms the basis of [his] claim." Ritchie, 342 F.3d at 908. Additionally, "Courts routinely take judicial notice of documents from the Copyright Office." Basile v. Twentieth Century Fox Film Corp., No. CV144263DMGJPRX, 2014 WL 12521340, at *2 (C.D. Cal. Aug. 19, 2014), aff'd, 678 F. App'x 576 (9th Cir. 2017). Because the Script is the basis for Plaintiff's claims and Defendants obtained it from the Copyright Office, the Court **GRANTS** Defendants' request for judicial notice of the Script.

Likewise, because the pilot episode of *Black-ish* forms the basis for Plaintiff's copyright claim as the allegedly infringing work, the Court also **GRANTS** Defendants' request for judicial notice of the DVD of the pilot episode of *Black-ish*. See id. (taking judicial notice of DVD of allegedly infringing work); Campbell v. Walt Disney Co., 718 F. Supp. 2d 1108, 1111 n.3 (N.D. Cal. 2010)(same).

Defendants request judicial notice of Plaintiff's proposed Amended Complaint filed along with the parties' stipulation asking the Court to grant leave for Plaintiff to file the Amended Complaint [26]. Courts may "take judicial notice of court filings and other matters of public record." <u>Reyn's Pasta Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n.6 (9th Cir. 2006). As such, the Court **GRANTS** Defendants' request for judicial notice of Plaintiff's proposed Amended Complaint.

Finally, Defendants seek judicial notice of United States Census Bureau data identifying the top fifteen most popular last names in the United States. "United States census data is an appropriate and frequent subject of judicial notice." <u>Hollinger v. Home State Mut. Ins. Co.</u>, 654 F.3d 564, 571-72 (5th Cir. 2011) (citing <u>United States v. Esquivel</u>, 88 F.3d 722, 726-27 (9th Cir. 1996)). Therefore, the Court **GRANTS** Defendants' request for judicial notice of this Census Data.

 2. <u>Defendants' Motion to Dismiss</u>

As a preliminary matter, Plaintiff did not file an Opposition to Defendants' Motion to Dismiss. Pursuant to Local Rule 7-12, "failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." C.D. Cal. R. 7-12. Accordingly, the Court **GRANTS** Defendants' Motion

without reaching the merits, simply based on Plaintiff's failure to oppose the Motion. See Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995)(per curiam) (affirming grant of an unopposed motion to dismiss under local rule by deeming pro se litigant's failure to oppose as consent to granting motion). Despite this, the Court will discuss the merits of Defendants' Motion to Dismiss.

Defendants seek dismissal of the four causes of action Plaintiff alleges against them in the Complaint: (1) copyright infringement, (2) unfair competition under the Lanham Act, (3) declaratory relief, and (4) injunctive relief. Plaintiff's proposed Amended Complaint only includes a copyright infringement claim against Defendants; however, Plaintiff has not filed the proposed Amended Complaint. Therefore, the Complaint is the operative pleading, and the Court addresses the copyright infringement, unfair competition, and declaratory and injunctive relief claims contained in the Complaint in turn below.[1]

  a.  *Plaintiff's Copyright Infringement Claim*

To maintain a claim for copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v.

_____

[1] The Complaint also includes a claim for fraud. See Compl. ¶¶ 39-52. However, this claim is only asserted against former Defendants Overbrook and Will Smith. The Court dismissed these Defendants on April 20, 2017 [28].

13

<u>Rural Tel. Servs. Co.</u>, 499 U.S. 340, 361 (1991).
Copying may be established by demonstrating (1) "that
the [defendant] had access to plaintiff's copyrighted
work" and (2) "that the works at issue are
substantially similar in their protected elements."
<u>Cavalier v. Random House, Inc.</u>, 297 F.3d 815, 822 (9th
Cir. 2002).

"There is ample authority for holding that when the
copyrighted work and the alleged infringement are both
before the court, capable of examination and
comparison, non-infringement can be determined on a
motion to dismiss." <u>Christianson v. West Pub. Co.</u>, 149
F.2d 202, 203 (9th Cir. 1945). "If after examining the
works themselves, th[e] Court determines that there is
no substantial similarity, then the plaintiff [] can
prove no facts in support of his claim which would
entitle him to relief—the standard for dismissal under
Rule 12(b)(6)." <u>Boyle v. Stephens, Inc.</u>, 97 Civ. 1351
(SAS), 1998 U.S. Dist. LEXIS 1968, at *12 (S.D.N.Y.
Feb. 23, 1998); <u>see</u> <u>Zella v. E.W. Scripps Co.</u>, 529 F.
Supp. 2d 1124, 1131 (C.D. Cal. 2007).

i. *Plaintiff Has Alleged a Reasonable*
*Possibility of Access to the Script*

Plaintiff must first allege that Defendants had
access to his copyrighted work. <u>See</u> <u>Cavalier</u>, 297 F.3d
at 822. Proof of access requires only "an opportunity
to view or to copy plaintiff's work." <u>Sid & Marty</u>
<u>Krofft Television v. McDonald's Corp.</u>, 562 F.2d 1157,

14

1162 (9th Cir. 1977). "Access must be more than a bare possibility and may not be inferred through speculation or conjecture." <u>Gaste v. Kaiserman</u>, 863 F.2d 1061, 1066 (2d Cir. 1988). One way to show access is through "evidence that a third party with whom both the plaintiff and defendant were dealing had possession of plaintiff's work." <u>Kamar Int'l, Inc. v. Russ Berrie & Co.</u>, 657 F.2d 1059, 1062 (9th Cir. 1981).

Defendants do not discuss the access element of Plaintiff's copyright claim in their Motion to Dismiss. However, Defendants do note that they have also filed a Motion to Strike [42], which discusses Plaintiff's meritless argument for access. <u>See</u> Mot. to Dismiss 1:9 n.2. Attached to Defendants' Motion to Strike is the Declaration of Richard O'Sullivan, in which Mr. O'Sullivan declares that Will Smith did not have access to Plaintiff's Script. <u>See</u> Decl. of Richard O'Sullivan, ECF No. 42-1.

"[W]hen the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), 'review is limited to the complaint.'" <u>Lee</u>, 250 F.3d at 688 (quoting <u>Cervantes v. City of San Diego</u>, 5 F.3d 1273, 1274 (9th Cir. 1993)). Further, "factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." <u>Id.</u> In his Complaint, Plaintiff alleges that he submitted the Script to the script writing contest Overbrook sponsored. Compl. ¶ 9. Plaintiff

alleges that Will Smith is the director of Overbrook
and that Mr. Smith and Barris worked together
professionally and have developed a close personal
relationship.  Id. ¶¶ 4, 15.  Plaintiff then concludes
that Mr. Smith allowed Barris access to the Script,
which Barris used as the basis for *Black-ish*.  Id.
¶ 46.  These allegations suggest that a third party,
Mr. Smith and Overbrook, with whom both Plaintiff and
Barris were dealing, had possession of Plaintiff's
work.  Such allegations, while circumstantial, show a
reasonable possibility that Defendants had access to
Plaintiff's script and therefore are sufficient to
survive a motion to dismiss.  Shame on You Prods. v.
Banks, 120 F. Supp. 3d 1123, 1149 (C.D. Cal. 2015)("To
satisfy its burden of pleading access, plaintiff must
allege facts 'from which a reasonable finder of fact
could infer that the defendant had a reasonable
opportunity to copy his or her work.'" (quoting Grubb
v. KMS Patriots, L.P., 88 F.3d 1, 3 (1st Cir. 1996))).

> ii. *Across the Tracks and Black-ish Are*
> *Not Substantially Similar*

In addition to alleging access to the Script,
Plaintiff must also allege that *Across the Tracks* and
*Black-ish* are substantially similar.  The test for
substantial similarity is broken into two parts:  an
intrinsic test and an extrinsic test.  Shaw v.
Lindheim, 919 F.2d 1353, 1356 (9th Cir. 1990).  "[T]he
intrinsic test, which examines an ordinary person's

subjective impressions of the similarities between two works, is exclusively the province of the jury." <u>Funky Films, Inc. v. Time Warner Entm't Co.</u>, L.P., 462 F.3d 1072, 1077 (9th Cir. 2006). Courts, in examining substantial similarity as a matter of law, apply the "extrinsic test," which focuses on "articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events of the two works."[2] <u>Id.</u> As part of the extrinsic test, the court should only determine whether "the protectible elements, standing alone, are substantially similar." <u>Williams v. Crichton</u>, 84 F.3d 581, 588 (2d Cir. 1996). Because copyright law only protects expression of ideas, not the ideas themselves, stock scenes, general plot ideas, and scenes-a-faire (situations and incidents that flow naturally from a basic plot premise) are not protected. <u>Cavalier</u>, 297 F.3d at 823.

In his Complaint, Plaintiff alleges that "all the major characters, thematic points, and plot turns were virtually identical to those of the Script Across the Tracks." Compl. ¶ 19. He specifically points to the "overarching theme of the juxtaposition of an upwardly

_____

[2] Because a jury may not find substantial similarity without evidence on both the extrinsic and intrinsic tests, if the Court determines that there is no substantial similarity as a matter of law, it has the power to dismiss a plaintiff's case. <u>See</u> <u>Zella</u>, 529 F. Supp. 2d at 1133 n.8; <u>see also</u> <u>Silas v. HBO, Inc.</u>, 201 F. Supp. 3d 1158, 1171 (C.D. Cal. 2016)("A court may dismiss a complaint on a 12(b)(6) motion, however, for failing to satisfy the extrinsic test.").

mobile African American family moving into a predominately Anglo community and the main characters and their characteristics and personality traits are virtually identical." Id. ¶ 21. The Court looks to these allegations, the Script, and the DVD of the pilot episode of *Black-ish*, to determine whether Plaintiff has sufficiently pled that the two works are substantially similar. See Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1178 (C.D. Cal. 2001), aff'd in part, dismissed in part, 90 F. App'x 496 (9th Cir. 2003), as amended on denial of reh'g (Mar. 9, 2004)("With these principles in mind, the Court must therefore engage in an 'analytic dissection' and comparison of the works at hand . . . .").

1) Plot

Plaintiff, in his Complaint, makes only conclusory allegations related to the similarities in the plots of the two works. See Compl. ¶ 19 ("[P]lot turns were virtually identical to those of the Script Across the Tracks."). In his proposed Amended Complaint, Plaintiff alleges that the plots of the two works are substantially similar because they both involve "an upwardly mobile African American family moving into and living amongst a predominately white neighborhood and the perceptions of the family by and between themselves and their neighbors and co-workers."[3] Am. Compl. ¶ 30.

_____

[3] While Plaintiff has at no point filed this proposed Amended Complaint, the allegations contained in the proposed

18

While Plaintiff may allege that this idea "was a radical and new departure from the traditional themes of African American centered television comedies," this plot, which as Defendants point out has been "repeatedly explored in film and television series," including *The Jeffersons*, *Diff'rent Strokes*, and *The Fresh Prince of Bel-Air*, is simply a "basic plot idea . . . not protected by copyright law." Cavalier, 297 F.3d at 824.

While both works involve African American families living in predominantly white areas, the concrete elements of the two works are not substantially similar. See Berkic v. Crichton, 761 F.2d 1289, 1293 (9th Cir. 1985)(holding that the court must look at "the actual concrete elements that make up the total sequence of events and the relationships between the major characters"). *Across the Tracks* focuses almost exclusively on the Johnson family's interactions with their new white neighbors, the overt racism that arises in these interactions, and the Johnsons' use of their faith to deal with this racism. The pilot episode of *Black-ish* does not once mention the Johnsons' neighbors, and the plot does not include any

Amended Complaint are relevant to the analysis of whether the two works are substantially similar and whether, if Plaintiff is allowed to amend his Complaint, he will be able to sufficiently plead a claim for copyright infringement. Therefore, the Court, in performing its comparison of the two works, looks at Plaintiff's allegations in both the Complaint and proposed Amended Complaint.

interactions with neighbors. In *Black-ish*, it appears that the Johnson family has been living in the predominantly white neighborhood for some time, and the focus of the plot is the struggles the main character, Andre, endures as he realizes his family has assimilated almost too well into the majority culture while forgetting their own minority culture in the process. For example, Andre scoffs at his son's intention to join the field hockey team and desire to be called "Andy" rather than Andre. *Across the Tracks* makes no mention of the Johnson family losing sight of their culture as they continue to interact with their white neighbors. Instead, the Johnsons in *Across the Tracks* seem to embrace their neighbors' attempts at "acting black," recognizing it as their neighbors' way of trying to make them feel comfortable in a new neighborhood.

The climaxes of the plots in both works are also dissimilar. The climax of *Across the Tracks* occurs when DJ faces racist comments at a sleepover, and his parents are then confronted with the aftermath of these comments. The climax of *Black-ish* occurs when Bow puts a stop to Andre's crazy antics in trying to make sure his family remains "black, not black-ish." While Andre faces some indirect racism with his co-worker trying to "act black" around Andre, the pilot does not focus on overt racism and instead focuses on Andre's fear that his family is not "black enough." Although the two

works "at a high level of generality" are similar, including the experiences of a black family living in a predominantly white area, these similarities only exist in the basic plots and are not protected. <u>See</u> <u>Berkic</u>, ("No one can own the basic idea for a story. General plot ideas are not protected by copyright law . . . ."); <u>see also</u> <u>Silas</u>, 201 F. Supp. 3d at 1174 ("[N]one of the alleged similarities [in the two plots] are substantially similar in their protectible objective details.").

Finally, Plaintiff alleges in his proposed Amended Complaint that the storylines of the adult characters receiving promotions is "identical." Am. Compl. ¶ 36. Plaintiff's allegations regarding these "identical" storylines are vague, but despite these allegations, it is hard to see how these storylines are substantially similar. *Black-ish* focuses on Andre's promotion to Senior Vice President of the Urban Division and the conflict that ensues when he learns he has been put in charge of "black stuff." The script of *Across the Tracks* had yet to explore Keisha's workplace, but she did not receive a promotion; rather, she obtained a better job at a different hospital. Further, there is nothing in *Across the Tracks* that suggests Keisha obtained the job because the hospital assumed she would better understand "black culture," like Andre's boss in *Black-ish*. Instead, it appears likely that *Across the Tracks* would explore Keisha's struggles of coming into

a new workplace where she is the new boss, specifically
the boss of her new neighbor, Katie Smith.  Even if
both characters did receive internal promotions and the
two shows explored the characters' reactions to those
promotions, basic plot ideas are "not protected by
copyright law."  Campbell, 718 F. Supp. 2d at 1112.

Therefore the plots of the two works are not
substantially similar.

2)  Theme

"A work's theme is its overarching message."
Silas, 201 F. Supp. 3d at 1180.  "[T]here is no
protection for stock themes or themes that flow
necessarily from a basic premise."  Id.; Cavalier, 297
F.3d at 823.

Defendants argue that Plaintiff's alleged theme,
"the juxtaposition of an upwardly mobile African
American family moving into a predominately Anglo
community," is merely a description of an underlying
plot idea, which copyright law does not protect.  Mot.
to Dismiss 11:20-24; see Berkic, 761 F.2d at 1293
("General plot ideas are not protected by copyright
law; they remain forever the common property of
artistic mankind.").  The Court agrees with Defendants'
assessment as Plaintiff's alleged theme does not
encompass an overarching message.  See Kouf v. Walt
Disney Pictures & Television, 16 F.3d 1042, 1045 (9th
Cir. 1994)(describing one work's theme as a
"celebrat[ion] [of] family values" and another work's

22

theme as "the triumph of good over evil"); cf. Silas, 201 F. Supp. 3d at 1180 ("[T]he alleged theme of 'fast paced and lavish lives of professional football players' is an underlying plot idea, not a theme."). Instead, it describes the basic plot of the two works, and such generic ideas are not protectable expressions courts will consider in an extrinsic analysis.  See Silas, 201 F. Supp. 3d at 1180.

Plaintiff alleges in the proposed Amended Complaint that the theme of "the juxtaposition of the white majority community attempting to appear cool, hip, and at peace with their new African American neighbors is copied by Blackish from Across the Tracks."  Am. Compl. ¶ 30.  Plaintiff notes the similarities of the neighbors in *Across the Tracks* and the colleagues in *Black-ish* who attempt "to talk with swagger or 'act Black.'"  Id.

Importantly, "acting black" is not a theme but rather an underlying plot idea because it is not an underlying message in the works.  Silas, 201 F. Supp. 3d at 1180.  Further, in *Black-ish*, while Andre's co-workers do use dialogue in an attempt to "act black," these interactions are extremely brief and are not a large point of contention.  Rather, Andre, while a bit annoyed, seems to brush off these interactions.  On the other hand, these interactions are the main focus of the plot in *Across the Tracks*; the Johnson family spends the entire script dealing with the Smiths'

effort to dress, talk, and act "black" to make the Johnsons feel more comfortable.

The only similarity is the idea of "acting black"; none of the actual dialogue or instances of "acting black" in the two works are similar. The Smiths in *Across the Tracks* show up to the Johnsons' barbeque having completely transformed their style in an effort to "act black." The Script states, "Tim is dressed like a gansta [sic] rapper, and Katie is looking like a video girl, with her heels and lip gloss popping." RJN, Ex. 1 at 17. In *Black-ish*, Andre's co-worker refers to him as "Dr. Dre" and "Driggity Dre" in an effort to show comradery. These instances are "[s]cenes-à-faire, or situations and incidents that flow necessarily or naturally" from the basic plot premise of a black family living and working in a predominantly white area, and they are not protected. Cavalier, 297 F.3d at 823.

Plaintiff alleges that the theme of "moving into the majority culture [and] constantly feel[ing] that they are oddities and out of place" is prevalent in both works. Am. Compl. ¶ 31. The alleged theme of feeling out of place also naturally arises from the plot and cannot qualify as a protectable element of the work. Benay v. Warner Bros. Entertainment, Inc., 607 F.3d 620, 627 (9th Cir. 2010)(holding "fish-out-of-water" theme naturally arises from two works' shared plot of an American war veteran who travels to Japan).

Because this "theme" arises from the basic plot idea, it is not protected, and the Court must therefore disregard this non-protectable element in looking at Plaintiff's ability to plead substantial similarity. Cavalier, 297 F.3d at 822-23 ("[W]hen applying the extrinsic test, a court must filter out and disregard the non-protectible elements in making its substantial similarity determination.").

Finally, as Defendants note in their Motion, "the actual themes of the two works are markedly different." Mot. to Dismiss 14:8. In *Across the Tracks*, the primary theme is relying on your faith to help you overcome racism, while in *Black-ish* the theme is staying true to one's heritage, or "keeping it real." *Black-ish* does not reference the Johnsons' religion nor does it use religion as the family's coping mechanism for conflict. While both families may be dealing with the struggles of being a minority in a majority culture, the message in each work is distinct. Therefore, the themes of the two works are not substantially similar.

3)   Characters

Plaintiff alleges that aspects of the characters in the two works are very similar. He notes that the two families share the same last name, Johnson, and each family has a son named after the father (Dave and Dave Jr. in *Across the Tracks* and Andre and Andre Jr. in *Black-ish*). Am. Compl. ¶ 32. Plaintiff also alleges

that the two mothers are very similar because they both
work in the medical field, with the mother in *Across
the Tracks* working as a nurse manager and the mother in
*Black-ish* working as a doctor.  <u>Id.</u>  Plaintiff claims
that the teenage daughter characters are "virtually
identical" because they are both "constantly too busy
on [their] cell phone[s] to be involved in any family
discussions revolving around [them]."  <u>Id.</u> ¶ 34.

As Defendants note, the cast of characters in the
two works are very different.  In *Black-ish*, Andre and
his wife, Bow, have four children, a teenage son, a
teenage daughter, and pre-teen twins.  In *Across the
Tracks*, Dave and his wife, Keisha, have two kids, a
teenage son and a teenage daughter.  There is a
grandfather character in *Black-ish*, while there is no
grandfather character in *Across the Tracks*.
Additionally, the Smiths, the Johnsons' neighbors in
*Across the Tracks*, play a significant role, while there
are no neighbor characters in *Black-ish*.  <u>See</u> <u>Benay</u>,
607 F.3d at 627 (noting that characters in one work did
not have a parallel in the other work).

Additionally, the similarities that Plaintiff
alleges are incidental and do not reach the level of
substantially similar.  The fact that the families in
both works have the last name Johnson and both have son
characters who are "juniors" is of no consequence,
particularly where, as here, the names are generic.
<u>See</u> <u>CK Co. v. Burger King Corp.</u>, 92 Civ. 1488 (CSH),

1994 U.S. Dist. LEXIS 13934, at *22 (S.D.N.Y. Sep. 29, 1994)("The fact that characters have identical names and have similar roles in two works does not necessitate a finding of substantial similarity.").

Further, Plaintiff's allegations regarding the similarities of the characters personalities are not protectable. "[O]nly distinctive characters are protectible, not characters that merely embody unprotected ideas." Benay, 607 F.3d at 626. Accordingly, "[n]o character infringement claim can succeed unless plaintiff's original conception sufficiently developed the character, and defendants have copied this development and not merely the broader outlines." Smith v. Weinstein, 578 F. Supp. 1297, 1303 (S.D.N.Y. 1984), aff'd, 738 F.2d 419 (2d Cir. 1984). The character trait of teenage daughters being too busy on their cell phones is "too abstract to warrant copyright protection." Shame on You Prods., 120 F. Supp. 3d at 1164. It is a surface-level description of a character and does not make either daughter distinctive; it merely describes the majority of today's teenagers. Id. (holding that stock characters do not invoke copyright protection). Other than being typical teenage girls, the two characters are quite different. Kimberly in *Across the Tracks* learned to cook from her mother and prepares dinner for the whole family. There is no suggestion that Zoey in *Black-ish*, who regularly sasses her father, would ever be

interested in cooking a dinner for her whole family. See Hogan v. DC Comics, 48 F. Supp. 2d 298, 309-10 (S.D.N.Y. 1999)("In determining whether characters are similar, a court looks at the totality of [the characters'] attributes and traits . . . ." (quoting Walker v. Time Life Films, Inc., 784 F.2d 44, 50 (2d Cir. 1986))). Additionally, *Across the Tracks* has set up a love interest for Kimberly, while there is no equivalent love interest for Zoey.

The fact that both mother characters work in the medical field is another example of a non-distinct trait that cannot be copyrighted. The two women only work in the same field; they do not share the exact same profession, and even if they did, such similarity would not be protected. See Eaton v. NBC, 972 F. Supp. 1019, 1029 (E.D. Va. 1997)(holding that basic human traits including occupation "are too general or too common to deserve copyright protection"). Plaintiff's allegations of similarities that only involve working in the same field, are "far from the level of specificity and distinctiveness required for characters to be protected by copyright." Gadh v. Spiegel, No. CV 14-855-JFW (PJWx), 2014 U.S. Dist. LEXIS 64081, at *15 (C.D. Cal. Apr. 2, 2014).

Finally, the main characters, Andre in *Black-ish* and Dave in *Across the Tracks*, are distinct as well. Andre is a successful advertising executive who is distraught when he realizes that his family has become

too assimilated to the majority culture in which they live.  He then comedically goes above and beyond to make sure his children, most specifically his son, Andre Jr., appreciate their black culture.  Dave, on the other hand, owns a used car dealership and is a man of strong faith who relies on God to give him guidance about the racism his family is facing.  Besides working hard to provide a good life for their families, the two men do not share many attributes.  Any similarities "flow naturally from the works' shared premises" and are thus not protected.  <u>Benay</u>, 607 F.3d at 627.

Accordingly, there are no substantial similarities between the characters in the two works.

### 4) Dialogue

Plaintiff fails to make any allegations in his Complaint regarding the similarity of the works' dialogue.  However, in his proposed Amended Complaint, he alleges that "specific words and phrases are said if [sic] a virtually identical way."  Am. Compl. ¶ 35.  "[E]xtended similarity of dialogue [is] needed to support a claim of substantial similarity."  <u>Olson v. Nat'l Broad. Co.</u>, 855 F.2d 1446, 1450 (9th Cir. 1988).  Plaintiff alleges three instances of what he claims are "virtually identical" dialogue.  Plaintiff points to an instance where characters in both works refer to "seeing color."  Am. Compl. ¶ 35.  Bow in *Black-ish* refers to how her twins do not "see color," while the Script notes that the neighbors still "saw color."  <u>Id.</u>

The reference in *Across the Tracks* to how the neighbors "saw color" is a script note, not dialogue, and is thus irrelevant to the Court's analysis.

The two examples Plaintiff provides of actual dialogue, which he alleges are "identical," are also insufficient to show substantial similarity. Plaintiff notes that both works refer to "being black."[4] Am. Compl. ¶ 35. This two-word phrase, which is used once in each work, can in no way be construed as "extended similarity of dialogue." <u>See</u> <u>Shame on You Prods.</u>, 120 F. Supp. 3d at 1156 (noting that any overlap in dialogue in the two works was "isolated and involve[d] common words or phrases," which did not support a claim for substantial similarity). Further, short, stock phrases are not protectable. <u>See</u> <u>Southco, Inc. v. Kanebridge Corp.</u>, 390 F.3d 276, 285-287 (3d Cir. 2004)(recognizing the longstanding principle of copyright law that words and short phrases are not copyrightable). Therefore, even if this phrase could be considered "extended similarity of dialogue," it still could not support a claim for substantial similarity because the phrase is not a protected element the Court considers when examining claims for copyright infringement. <u>Cavalier</u>, 297 F.3d at 822-23.

Finally, Plaintiff points to a line of dialogue in

---

[4] In *Black-ish*, Andre states, "I need my family to be black again at home." Am. Compl. ¶ 35. In *Across the Tracks*, Dave states, "Do you mind being black for a second again[?]" <u>Id.</u>

each work where the father character states that his family can learn from their mistakes.[5]  The dialogue, while similar in the abstract, is not identical, and the message of learning from one's mistake is a message shared in countless works.  Such stock dialogue, "containing little in the way of original expression," cannot be protected.  See Narell v. Freeman, 872 F.2d 907, 911 (9th Cir. 1989).

Of note, Andre in *Black-ish* frequently provides voiceover narratives throughout the episode, while *Across the Tracks* does not have any voiceovers.  See Silas, 201 F. Supp. 3d at 1181 (noting the difference in use of, or lack of, voiceovers in the two works). This distinction is yet another way of showing how the dialogue in the two works, both in content and type, is dissimilar.

For the foregoing reasons, the three instances of dialogue Plaintiff alleges are "virtually identical," one of which is not even dialogue, are insufficient to allege substantial similarity.  See Silas, 201 F. Supp. 3d at 1181 (finding that one instance of similar dialogue was insufficient to survive motion to dismiss).

5)  Mood, Setting, and Pace

---

[5] In *Black-ish*, Andre states, the "lesson we learned today is that a man always admits when he is wrong," while in *Across the Tracks*, Dave states, "We can all learn a valuable lesson today, own up to being wrong, but if someone owns up to his wrong, you have to be man enough to forgive them."  Am. Compl. ¶ 35.

Plaintiff does not make any allegations regarding the two works' similarities in mood, setting, and pace. However, even a surface-level examination of these elements shows that the two works are not substantially similar.

While both works are billed as comedies, *Across the Tracks* takes on a more serious mood with the overt racism and clear movement towards a message of family strength and emphasis on religion as the Johnson family deals with the inappropriate behavior of their neighbors. *Black-ish* is much more light-hearted, even ending the episode with the family dancing at Andre Jr.'s "bro mitzvah." Thus, the moods of the two works are not substantially similar. See Olson, 855 F.2d at 1451 (holding that while both works were described as comedies and thus had similar moods, this was insufficient to demonstrate substantial similarity).

The setting of *Across the Tracks* is not clearly defined in the Script, while *Black-ish* is set in Los Angeles. Even if both works were set in Los Angeles, this similarity would not be protectable under copyright law. Alexander v. Murdoch, 2011 U.S. Dist. LEXIS 79503, at *21 (S.D.N.Y. July 14, 2011)(finding that the shared setting of Los Angeles was not protectable under copyright law). Therefore, there is no substantial similarity between the setting of the two works.

As Defendants note in their Motion, the pace of the

two works is very different.  Mot. to Dismiss 16:17-18.
In determining the pace of a work, courts look at the
time period within which the works are set.  See Capcom
Co., Ltd. v. MKR Group, Inc., No. 08-0904-RS, 2008 U.S.
Dist. LEXIS 83836, at *10 (N.D. Cal. Oct. 20, 2008).
The majority of *Across the Tracks* takes place in one
day, with the last scene occurring the following night.
Additionally, the scenes all take place in and around
the Johnsons' home.  The pace is slow and the scenes
are linear.  *Black-ish* is fast-paced as it cuts back
and forth between different parts of the Johnsons' home
and Andre's work place.  Additionally, *Black-ish*
clearly takes place over a number of days.  During the
pilot episode, Andre obtains the promotion, creates two
different presentations for work, and plans a "bro
mitzvah" for Andre Jr.  At the very least, the pilot
episode takes place over the course of a couple of
days.  See Kouf, 16 F.3d at 1046 (noting two works were
dissimilar when one took place over 24 hours and the
other took place over a series of days).  Thus, there
is no substantial similarity in the pace of the two
stories.

Ultimately, *Across the Tracks* and *Black-ish* share
similarities only in the abstract:  both works involve
black families living in predominantly white areas and
their experiences as they navigate living in these
areas.  Plaintiff's Complaint alleges nary a similarity
that is protectable under the copyright law.  See Funky

Films, 462 F.3d at 1081.  Even a review of Plaintiff's
proposed Amended Complaint does nothing to cure the
defects in his pleading of copyright infringement.
Plaintiff's allegations in the proposed Amended
Complaint are again generic ideas that flow from the
basic plot of the two works, not specific,
copyrightable elements.  See Shame on You Prods., 120
F. Supp. 3d at 1148 (noting that the court, in
evaluating the extrinsic test, only looks at
protectable elements of the works).

     Finally, this Court has reviewed both of the works
in detail, including examining the potential
"similarities between the plot, themes, dialogue, mood,
setting, pace, characters, and sequence of events in
two works."  Kouf, 16 F.3d at 1045.  Any similarities,
including characters "acting black," the lessons of
owning up to your mistakes, and the two families
feeling out of place in a predominantly white area,
"flow necessarily and naturally from the basic plot
premise."  See Cavalier, 297 F.3d at 823.
Consequently, Plaintiff cannot allege that the two
works are substantially similar, and the Court **GRANTS**
Defendants' Motion to Dismiss as to Plaintiff's
copyright infringement claim.
///

          b.  *Plaintiff's Unfair Competition Claim*
     Plaintiff also asserts a claim for unfair
competition, alleging that Defendants "have made, and

34

will continue to make a false and misleading designation about the origin of [*Black-ish*] in violation of the Lanham Act." Compl. ¶ 34. As Defendants note, the U.S. Supreme Court in <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23 (2003) dealt with the relationship between designation of origin claims under the Lanham Act and copyright claims. Mot. to Dismiss 23:4-7. In <u>Dastar</u>, the plaintiffs alleged that the defendant purchased video tapes from the plaintiffs, copied and edited the tapes, and then distributed the tapes as its own product. 539 U.S. at 26-27. The plaintiffs sued under the Lanham Act alleging that the defendant's "passing off" of the tapes as its own resulted in a "false designation of origin" of the tapes. <u>Id.</u> at 29. The Court focused on the definition of "origin" under the Lanham Act to determine whether it included the "entity that originated the ideas that 'goods' embody or contain." <u>Id.</u> at 32.

In holding that "origin" did not include the originator of the ideas but instead refers to the producer of the actual good itself, the Court noted that including the originator of the ideas in the "origin" definition would put the Lanham Act in conflict with copyright law. <u>Id.</u> at 34 ("[I]n construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally

occupied by patent or copyright." (quoting <u>TrafFix Devices, Inc. v. Mktg. Displays, Inc.</u>, 532 U.S. 23, 29 (2001))). Ultimately, the Court concluded that because the defendant was the producer of the actual video tapes it sold, it was therefore the "origin" of those tapes, and the plaintiffs could not prevail on their Lanham Act claim. <u>Id.</u> at 38.

Courts in the Central District have relied on this ruling and dismissed plaintiffs' claims for violation of the Lanham Act. <u>See</u> <u>Whitehead v. Millennium Films</u>, No. CV 15-03564-RGK (AGRx), 2016 U.S. Dist. LEXIS 187805, at *7 (C.D. Cal. May 4, 2016)(dismissing claim under Lanham Act where plaintiff alleged defendant made a false claim of creation as to the plaintiff's script); <u>Friedman v. Zimmer</u>, No. CV 15-502 GHK (Ex), 2015 U.S. Dist. LEXIS 143941, at *16 (C.D. Cal. July 10, 2015)(granting motion to dismiss Lanham Act claim based on allegation that movie score infringed plaintiff's copyright in a musical composition).

Here, Plaintiff's unfair competition claim under the Lanham Act is essentially a duplicate of his copyright claim. He does not allege that Defendants stole his physical script, repackaged it as their own, and then sold it. Rather, he is alleging that Defendants stole the ideas in the *Across the Tracks* script. <u>See</u> Compl. ¶ 34. Because Plaintiff does not allege that Defendant misappropriated his tangible goods, he cannot proceed with his unfair competition

claim.  <u>See</u> <u>Dastar</u>, 539 U.S. at 38.  The Court therefore **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's unfair competition claim.

c.  *Plaintiff's Claim for Declaratory Relief*

Plaintiff's allegations regarding his claim for declaratory relief are succinct and essentially only seek a judicial determination that Defendants infringed Plaintiff's copyright in *Across the Tracks*.  Compl. ¶¶ 54-55.  As noted above, Plaintiff does not have a viable claim for copyright infringement.  "[A]bsent a viable underlying claim," Plaintiff is not entitled to the declaratory relief he requests.  <u>See</u> <u>Shaterian v. Wells Fargo Bank, N.A.</u>, 829 F. Supp. 2d 873, 888 (N.D. Cal. 2011)(dismissing claim for declaratory relief after dismissing underlying claims upon which plaintiff sought declaratory relief).  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's declaratory relief claim.

d.  *Plaintiff's Claim for Injunctive Relief*

Plaintiff's final claim is a claim for injunctive relief.  As with his declaratory relief claim, Plaintiff premises his claim for injunctive relief on Defendants' alleged infringement of Plaintiff's copyright.  However, "[i]njunctive relief is a remedy and not, in itself, a cause of action."  <u>Biederman v. Nw. Tr. Servs.</u>, No. CV 15-02283-AB (JCx), 2015 U.S. Dist. LEXIS 82221, at *5 (C.D. Cal. June 24, 2015). Because the Court has dismissed Plaintiff's other

claims, he does not have any claim for which he can
seek injunctive relief. <u>Massacre v. Davies</u>, No.
13-cv-04005 NC, 2014 U.S. Dist. LEXIS 114787, at *17
(N.D. Cal. Aug. 18, 2014)(dismissing prayer for
injunctive relief "because [plaintiff] has not pled a
cause of action that could entitle him to that
relief"). As such, the Court **GRANTS** Defendants' Motion
to Dismiss as to Plaintiff's injunctive relief claim.

   3.   <u>Leave Amend Would be Futile</u>

   Federal Rule of Civil Procedure 15(a) provides that
a party may amend their complaint once "as a matter of
course" before a responsive pleading is served. Fed.
R. Civ. P. 15(a). After that, the "party may amend the
party's pleading only by leave of court or by written
consent of the adverse party and leave shall be freely
given when justice so requires." <u>Id.</u> Leave to amend
lies "within the sound discretion of the trial court."
<u>United States v. Webb</u>, 655 F.2d 977, 979 (9th Cir.
1981). The Ninth Circuit has noted "on several
occasions . . . that the 'Supreme Court has instructed
the lower federal courts to heed carefully the command
of Rule 15(a), F[ed]. R. Civ. P., by freely granting
leave to amend when justice so requires.'" <u>Gabrielson
v. Montgomery Ward & Co.</u>, 785 F.2d 762, 765 (9th Cir.
1986)(quoting <u>Howey v. United States</u>, 481 F.2d 1187,
1190 (9th Cir. 1973))(citations omitted).

   In motions to dismiss a copyright infringement
claim, courts have held that "[b]ecause substantial

similarity is 'a defect that cannot be cured by an amended complaint,'" dismissal without leave to amend is proper. <u>Schkeiban v. Cameron</u>, No. CV 12-0636-R MANX, 2012 WL 5636281, at *1 (C.D. Cal. Oct. 4, 2012), <u>aff'd</u>, 566 F. App'x 616 (9th Cir. 2014); <u>see</u> <u>Campbell</u>, 718 F. Supp. 2d at 1116.

Here, while Plaintiff attached his proposed Amended Complaint to the parties' stipulation to extend time to file an Amended Complaint [26], Plaintiff never filed the proposed Amended Complaint. However, the allegations in the proposed Amended Complaint do nothing to change the fact that Plaintiff cannot plead substantial similarity. As noted above, a comparison of the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events of the two works failed to reveal any substantial similarities. This defect cannot be cured by amendment, <u>see</u> <u>Silas</u>, 201 F. Supp. 3d at 1184, and thus, granting Plaintiff leave to amend would be futile. Therefore, the Court **GRANTS** Defendants' Motion to Dismiss without leave to amend.

    4. <u>Defendants' Motion to Strike and for Sanctions is **DENIED as MOOT**</u>

In light of the Court's **GRANT** of Defendants' Motion to Dismiss, the Court **DENIES as MOOT** Defendants' Motion to Strike and for Sanctions.

///
///
///

# III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss [35] **without leave to amend.** Accordingly, the Court **DENIES as MOOT** Defendants' Motion to Strike and for Sanctions [42].

This matter is closed. The Clerk shall terminate this case.

**IT IS SO ORDERED.**

DATED: September 13, 2017          s/ RONALD S.W. LEW

                                   **HONORABLE RONALD S.W. LEW**
                                   Senior U.S. District Judge