O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID LLOYD MARCUS, | 17-cv-00148-RSWL-AJWx |
| Plaintiff, | |
| v. | **ORDER Re: DEFENDANTS' MOTION FOR ATTORNEYS' FEES** [45] |
| ABC SIGNATURE STUDIOS, INC.; KHALABO INK SOCIETY; KENYA BARRIS; DOES 1-10, | |
| Defendants. | |

Plaintiff David Lloyd Marcus ("Plaintiff") brought the instant Action against Defendants ABC Signature Studios, Inc. ("ABC"); Khalabo Ink Society ("Khalabo"); and Kenya Barris ("Barris") (collectively, "Defendants") alleging copyright infringement and unfair competition. Defendants moved to dismiss Plaintiff's Complaint, and the Court granted Defendants' Motion to Dismiss on September 13, 2017. Currently before the Court is Defendants' Motion for

Attorneys' Fees [45]. Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** Defendants' Motion for Attorneys' Fees is **GRANTED**.

### I. BACKGROUND

**A. Factual Background**

In February 2013, former Defendant Overbrook and ANA Alliance sponsored a script-writing contest called "Search for America's Newest Screenwriter." Compl. ¶ 9, ECF No. 1. On March 20, 2013, Plaintiff submitted a script called *Across the Tracks* ("*Across the Tracks*" or the "Script") to the contest. Id. ¶ 10. In November 2014, Plaintiff submitted the Script to the United States Copyright Office and received the exclusive rights and privileges to the Script. Id. ¶ 17. Plaintiff alleges he never heard from the contest creators on the status of his submission. Id. ¶ 12.

Plaintiff alleges that former Defendant Will Smith is the owner of former Defendant Overbrook, the sponsor of "Search for America's Newest Screenwriter." Id. ¶ 4. Plaintiff further alleges that Mr. Smith developed a close business relationship with Defendant Barris after working with Barris on various television projects. Id. ¶¶ 15-16.

In the fall of 2014, ABC released a pilot called *Black-ish*, created by Barris and produced by Khalabo. Id. ¶ 18. Plaintiff alleges *Black-ish* is virtually

identical to *Across the Tracks*, including the major characters, thematic points, and plot turns. <u>Id.</u> ¶¶ 18-19. Subsequently, Plaintiff initiated his Action in this Court against Defendants alleging copyright infringement under the Copyright Act of 1976 and unfair competition under the Lanham Act of 1946, and seeking declaratory and injunctive relief.

**B.   Procedural Background**

On January 6, 2017, Plaintiff filed his Complaint [1]. On April 26, 2017, the parties stipulated and this Court granted Plaintiff leave to file an amended complaint within five days of the Court's order and gave Defendants fourteen days to respond to the amended complaint. Plaintiff did not file an amended complaint within the timeline prescribed.

On April 11, 2017, the parties filed a Stipulation to Dismiss Defendants Overbrook and Will Smith [25]. The Court dismissed Defendants Overbrook and Will Smith on April 20, 2017 [28].

On May 11, 2017, Plaintiff's counsel filed a Motion to Withdraw as Attorney requesting to be relieved as counsel because of a disagreement that arose between counsel and Plaintiff which rendered counsel's ability to represent Plaintiff difficult. Mot. to Withdraw 3:12-16, ECF No. 31. The Court granted the Motion to Withdraw on June 7, 2017. ECF No. 40.

On May 22, 2017, Defendants filed their Motion to Dismiss [35], and on July 17, 2017, Defendants filed a

Motion to Strike and for Sanctions ("Motion to Strike") [42]. On September 13, 2017, the Court granted Defendants' Motion to Dismiss without leave to amend. ECF No. 44.

Following the Court's grant of Defendants' Motion to Dismiss, on September 15, 2017, defense counsel contacted Plaintiff to discuss Defendants' anticipated motion for attorneys' fees. Decl. of Justin M. Goldstein ("Goldstein Decl.") ¶ 27, ECF No. 45-1. On September 18, 2017, Plaintiff emailed defense counsel informing him that he had obtained new counsel. Id. ¶ 28. Defense counsel spoke with Plaintiff's new counsel, Cory Aronovitz, and informed him of Defendants' intent to recover all of their attorneys' fees to date. Id. ¶ 29. Defense counsel also informed Mr. Aronovitz that if Plaintiff ceased pursuing his claims, Defendants would forgo seeking to recover their attorneys' fees and costs. Id. ¶ 30.

On September 20, 2017, Mr. Aronovitz informed defense counsel that Plaintiff would agree to forgo his claims in exchange for Defendants' forgoing seeking their fees. Id. ¶ 32. Consequently, defense counsel prepared a draft agreement and sent it to Mr. Aronovitz on September 21, 2017. Id. ¶ 33. The next day, defense counsel received an email from Mr. Aronovitz stating that Mr. Aronovitz no longer represented Plaintiff. Id. ¶ 34. Plaintiff then emailed defense counsel with a six-figure settlement demand. Id. ¶ 35.

Defense counsel sent Plaintiff a letter summarizing defense counsel's prior conversation with Mr. Aronovitz and offering to speak with Plaintiff directly concerning the anticipated Motion for Attorneys' Fees. Id. Defense counsel did not receive a response to this letter. Id.

On September 27, 2017, Defendants filed their Motion for Attorneys' Fees [45]. Plaintiff's Opposition was due on October 17, 2017, but Plaintiff did not file an Opposition.

## II. DISCUSSION

**A.** **Legal Standard**

"Under the Copyright Act of 1976, a district court has the discretion to award 'a reasonable attorneys' fee to the prevailing party.'" Love v. Associated Newspapers, Ltd., 611 F.3d 601, 614 (9th Cir. 2010)(quoting 17 U.S.C. § 505). Both prevailing plaintiffs and prevailing defendants can recover attorneys' fees under the Copyright Act. Fantasy, Inc. v. Fogerty, 94 F.3d 553, 558 (9th Cir. 1996). Courts must hold both prevailing plaintiffs and prevailing defendants to the same standard when determining whether to award attorneys' fees. Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994).

In determining whether to award attorneys' fees to a prevailing defendant, the court may consider, but is not limited to, the following factors: "(1) defendant's degree of success obtained on the claim, (2) the

5

frivolousness of plaintiff's claim, (3) the objective reasonableness of plaintiff's factual and legal arguments, (4) plaintiff's motivation in bringing the lawsuit, and (5) the need for compensation and deterrence." DuckHole Inc. v. NBCUniversal Media LLC, No. CV-12-10077-BRO, 2013 WL 5797204, at *2 (C.D. Cal. Oct. 25, 2013)(citing Fantasy, 94 F.3d at 558); see Wall Data Inc. v. L.A. Cty. Sheriff's Dep't, 447 F.3d 769, 787 (9th Cir. 2006).

**B. Analysis**

Plaintiff did not file an opposition to Defendants' Motion for Attorneys' Fees, and his failure to file "may be deemed consent to the granting [] of the motion." C.D. Cal. R. 7-12. Therefore, because Plaintiff has not opposed Defendants' request for attorneys' fees, such request is warranted, and the Court **GRANTS** Defendants' Motion for Attorneys' Fees. See Minow v. Lexus, No. CV 06-7496 CAS (SHX), 2008 WL 11338145, at *1 (C.D. Cal. Aug. 15, 2008)(granting motion for attorneys' fees when plaintiff failed to file an opposition to defendant's motion).

Further, an award of attorneys' fee is appropriate on the merits of Defendants' Motion for Attorneys' Fees. As explained below, the factors courts consider in determining whether to award attorneys' fees weigh in favor of granting Defendants' Motion for Attorneys' Fees.

///

1. <u>Award of Attorneys' Fees</u>

   a. *Degree of Success*

The first factor, the party's degree of success in the lawsuit, "weighs more in favor of a party who prevailed on the merits, rather than on a technical defense." DuckHole, 2013 WL 5797204, at *2. The Court granted Defendants' Motion to Dismiss without leave to amend, concluding that there were no substantial similarities between the two works. Order re Defs.' Mot. to Dismiss 39:13-20, ECF No. 44. Defendants thus prevailed on the merits, and this factor weighs in favor of granting attorneys' fees. See DuckHole, 2013 WL 5797204, at *2 ("The Court granted Defendants['] motion to dismiss without leave to amend after finding 'no similarity, much less substantial similarity, between any expressive elements in the works.' This factor weighs in favor of granting Defendants' Motion.").

   b. *Frivolousness*

Under the second factor, the Court examines whether Plaintiff's underlying claims were frivolous. Columbia Pictures Television Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1197 (9th Cir. 2001). "A claim is frivolous when it is 'clearly baseless,' involving 'fantastic or delusional scenarios.'" Wolf v. Travolta, No. 214CV00938CASPJWX, 2016 WL 1676427, at *5 (C.D. Cal. Apr. 25, 2016)(internal citation omitted). Defendants do not provide argument regarding

this factor. However, "frivolousness . . . is no longer required" for an award of attorneys' fees. Fantasy, 94 F.3d at 560. As such, the Court need not consider this factor.

   c. *Objective Unreasonableness*

Under the third factor, the Court considers the objective unreasonableness of a party's claims, "both in the factual and in the legal components of the case." Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1120 (9th Cir. 2007). "[T]he mere fact that [a party] lost cannot establish his objective unreasonability." Seltzer v. Green Day, Inc., 725 F.3d 1170, 1181 (9th Cir. 2013). The standard for objective unreasonableness is lower than that of frivolity, with a claim being objectively unreasonable when the party asserting it "should have known from the outset that its chances of success in this case were slim to none." SOFA Entertainment, Inc. v. Dodger Prods., Inc., 709 F.3d 1273, 1280 (9th Cir. 2013).

As Defendants explain in their Motion for Attorneys' Fees, it was objectively unreasonable for Plaintiff to contend that Defendants had access to Plaintiff's script. Mot. for Att'ys' Fees 11:5-7, ECF No. 45. This was made even more clear during the litigation. Prior to filing their Motion to Dismiss, Defendants provided Plaintiff's former counsel with a sworn declaration showing that Defendants at no point received or reviewed Plaintiff's script. Goldstein

Decl. ¶¶ 4-5, Ex. C. After receiving this sworn testimony, Plaintiff's former counsel withdrew from representing Plaintiff because a disagreement arose between Plaintiff and his counsel regarding the effect of the sworn testimony. See Mot. to Withdraw 4:24-26. Nonetheless, Plaintiff refused to dismiss this Action, and Defendants were forced to proceed with their Motion to Dismiss. Plaintiff's refusal to dismiss his case after receiving clear evidence negating one of the elements of his copyright claim shows that Plaintiff's claims were objectively unreasonable. Gable v. Nat'l Broad. Co., No. CV084013SVWFFMX, 2010 WL 11506430, at *5 (C.D. Cal. Aug. 6, 2010)(finding copyright claim objectively unreasonable where the plaintiff's "theory of access was unsupported by the facts").

Additionally, it was objectively unreasonable for Plaintiff to contend that the two works were substantially similar. Courts have determined that a plaintiff's claim is objectively unreasonable where there is a "lack of any meaningful or legally cognizable similarity." Gable, 2010 WL 11506430, at *5; see also Shame on You Prods., 2016 WL 5929245, at *8; Duckhole, 2013 WL 5797204, at *3. As explained throughout the Court's Order granting Defendants' Motion to Dismiss, copyright law does not protect "stock scenes, general plot ideas, and scenes-a-faire." Order re Defs.' Mot. to Dismiss 17:14-15. After reviewing the two works, the Court concluded that

"Plaintiff's Complaint alleges nary a similarity that is protectable under copyright law." Id. at 33:27-28. Due to the lack of any legally cognizable similarity between *Black-ish* and *Across the Tracks*, the lack of substantial similarity was obvious, and Plaintiff's suit was objectively unreasonable. See Randolph v. Dimension Films, 634 F. Supp. 2d 779, 794 (S.D. Tex. 2009)(finding copyright claim was objectively unreasonable where plaintiff failed to identify any copyrightable similarity between the works); Williams v. Crichton, 891 F. Supp. 120, 122 (S.D.N.Y. 1994)(awarding attorneys' fees after finding objective unreasonableness based on the fact that the similarities plaintiff asserted all flowed from an uncopyrightable concept). This factor thus weighs in favor of awarding attorneys' fees.

        d.   *Motivation*

"[T]he existence of bad faith or an improper motive in bringing or pursuing an action weighs in favor of an award of fees to a prevailing party." Frost-Tsuji Architects v. Highway Inn, Inc., No. CV 13-00496 SOM/BMK, 2015 WL 5601853, at *7 (D. Haw. Sept. 23, 2015). "A finding of bad faith can be based on actions that led to the lawsuit, as well as on the conduct of the litigation." Id.

Defendants argue that Plaintiff's lawsuit "was motivated by the desire to extract a large (and entirely unjustified) payout." Mot. for Att'ys' Fees

12:6-8. In arguing a bad faith motive, Defendants also point to Plaintiff's conduct both leading up to Defendants filing their Motion to Dismiss and following the Court's Order granting Defendants' Motion to Dismiss. Id. at 12:5-18. Prior to filing their Motion to Dismiss, Defendants provided Plaintiff's former counsel with sworn testimony negating the access element of Plaintiff's copyright infringement claim. Goldstein Decl. ¶ 8. Despite the withdrawal of Plaintiff's former counsel and multiple communications from defense counsel to Plaintiff outlining the clear issues with his claims, Plaintiff informed Defendants that he had no intention of dismissing this Action and instead told defense counsel that he was only willing to discuss a settlement amount. See id. ¶ 23.

Even if Plaintiff's refusal to accept Defendants' arguments regarding Plaintiff's claims is not sufficient evidence alone for a showing of bad faith, these actions, combined with Plaintiff's actions following the Court's issuance of its Order on Defendants' Motion to Dismiss, exemplify bad faith. The Court granted Defendants' Motion to Dismiss, a motion Plaintiff did not even oppose. After the Court issued its Order, defense counsel contacted Plaintiff to discuss Defendants' anticipated motion for attorneys' fees. Id. ¶ 27. Defense counsel spoke with Plaintiff's new counsel, Mr. Aronovitz, and they discussed entering into an agreement where Defendants

would forgo seeking attorneys' fees if Plaintiff agreed to stop pursuing his claims. Id. ¶¶ 29-30. After the parties agreed to proceed with the agreement and defense counsel drafted the agreement, Plaintiff fired his counsel and sent Defendants a six-figure settlement demand, thus nullifying the agreement and forcing Defendants to incur further unnecessary fees. See id. ¶¶ 32-35.

Despite his refusal to stop pursuing his claims and his repeated demands for a large settlement, Plaintiff failed to provide any opposition to Defendants' Motion for Attorneys' Fees. Plaintiff's failure to cooperate with Defendants, while simultaneously refusing to actively participate in this litigation, shows a clear motivation only for monetary gain. Plaintiff has made no attempt toward a resolution of this matter. Defendants, on the other hand, have been forced to incur significant attorneys' fees while making an effort to resolve this matter in the most cost-efficient way possible for all parties. Accordingly, Plaintiff's cumulative conduct throughout this litigation provides evidence of bad faith, and this factor weighs in favor of awarding attorneys' fees.

   e. *Need for Compensation and Deterrence*

In assessing the fifth factor, courts determine whether the attorneys' fees award would "advance considerations of compensation and deterrence." Fantasy, 94 F.3d at 558 n.2. Courts recognize that

"[d]eterring non-meritorious lawsuits against defendants seen as having 'deep pockets' and compensating parties that must defend themselves against meritless claims are both laudible ends." Scott v. Meyer, No. CV 09-6076 ODW(RZX), 2010 WL 2569286, at *3 (C.D. Cal. June 21, 2010). However, courts should not "discourage 'starving artists' from defending copyrights in original works due to the threat of attorney's fees." Brod v. Gen. Pub. Grp., Inc., 32 F. App'x 231, 236 (9th Cir. 2002).

While the Court recognizes that the Copyright Act was created to "encourage the production of original literary, artistic, and musical expression for the good of the public," Fogerty, 510 U.S. at 524, an award of attorneys' fees to Defendants may be the only way to deter Plaintiff from continuing his bad faith conduct in this Action and any further litigation he may initiate, see AF Holdings LLC v. Navasca, No. C-12-2396 EMC, 2013 WL 3815677, at *3 (N.D. Cal. July 22, 2013)("[G]iven AF's conduct, there is a strong argument in favor of awarding fees as a deterrent, both with respect to AF and other persons or entities that might contemplate a similar business model that is not intended to protect copyrighted work but instead designed to generate revenues through suits and coerced settlements."). In this Action, Defendants have offered Plaintiff many opportunities to walk away from his lawsuit without having to pay Defendants'

13

attorneys' fees incurred in defending against Plaintiff's meritless lawsuit. Instead of accepting this offer, Plaintiff has continued to seek six-figure settlements from Defendants, whom he clearly sees as having deep pockets. Therefore, a fee award in this matter is warranted, especially after "Defendants were forced to defend against Plaintiff's claims even after pointing out the fatal flaws from which [his] lawsuit suffered." Scott, 2010 WL 2569286, at *3; see Duckhole, 2013 WL 5797204, at *4.

Balancing the above factors, an award of attorneys' fees is appropriate under the Copyright Act. Accordingly, the Court **GRANTS** Defendants' Motion.[1]

    2.   <u>Reasonableness of the Amount of Fees Requested</u>

After determining that a party is entitled to an award of attorneys' fees, the court must determine if the fees requested are reasonable. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

Courts employ the "lodestar method" to determine the reasonableness of the requested attorneys' fees. Hensley, 461 U.S. at 433. "The lodestar figure is

---

[1] While the above analysis contemplates an award of attorneys' fees under 17 U.S.C. § 505 for defense against Plaintiff's copyright claim, the award of attorneys' fees encompasses Defendants' defense of all of Plaintiff's claims, which were based on the same allegations as Plaintiff's copyright claim. See Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc., 122 F.3d 1211, 1230 (9th Cir. 1997)(finding that a prevailing party could recover attorneys' fees incurred in defending against a copyright claim and any related claims); Counts v. Meriwether, No. 2:14-CV-00396-SVW-CW, 2016 WL 1165888, at *6 (C.D. Cal. Mar. 9, 2016)(same).

14

calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." In re Bluetooth Headset Prods. Liability Litig., 654 F.3d 935, 941 (9th Cir. 2011). "The fee applicant bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of those hours worked." Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992).

Here, Defendants seek an award of attorneys' fees based on the work of two attorneys, Justin Goldstein and Michelle Han.[2] Goldstein Decl. ¶¶ 36-37. As explained in Mr. Goldstein's Declaration, Mr. Goldstein is a partner at Carlsmith Ball LLP who has been practicing law for nearly twenty years and bills at an hourly rate of $500, while Ms. Han, a fifth-year associate at Carlsmith Ball LLP, bills at an hourly rate of $320. Id. ¶¶ 36-37, 41. These rates are comparable to rates the Central District has previously approved for attorneys with similar skill and experience in Los Angeles in copyright cases. See, e.g., Shame on You Prods., 2016 WL 5929245, at *14 (finding partner rate of $595 per hour and associate

---

[2] At the outset of this case, Barris and Khalabo were represented by other counsel. Defendants are not seeking to recover the fees incurred by this counsel or Defendants' in-house counsel. Mot. for Att'ys' Fees 21:17-21.

15

rates of $395 and $320 per hour reasonable in copyright action); Perfect 10, Inc. v. Giganews, Inc., No. CV 11-07098-AB SHX, 2015 WL 1746484, at *15-16 (C.D. Cal. Mar. 24, 2015)(finding "reasonable and comparable" hourly fees for partners ranging from $610 to $930); DuckHole, 2013 WL 5797204, at *5 (finding $580 hourly rate for a partner and $380 hourly rate for a third-year associate to be reasonable).

Defendants seek recovery of $79,942 in attorneys' fees for work done prior to the Court's grant of Defendants' Motion to Dismiss, which consists of $16,205 for investigating Plaintiff's claims, $37,868 for the preparation of Defendants' Motion to Dismiss, and $25,869 for preparation of Defendants' Motion to Strike. Goldstein Decl. ¶ 45. The Court finds these fees to be reasonable, especially in light of the fact that Defendants sought to avoid having to file their Motion to Dismiss by stipulating to the filing of Plaintiff's Amended Complaint and repeatedly communicating with Plaintiff regarding the weaknesses in his claims to secure voluntary dismissal. Due to Plaintiff's issues with his former counsel, who ultimately withdrew from representing Plaintiff, and Plaintiff's constant flip-flopping regarding whether he would file an amended complaint, Defendants were forced to revise their Motion to Dismiss multiple times, resulting in further fees. After reviewing defense counsel's billing entries, which are broken up by

attorney and task, the Court finds that the fees incurred in relation to Defendants' Motion to Dismiss and Motion to Strike were reasonable. See id., Ex. Q.

Defendants also seek to recover fees incurred in connection with the instant Motion for Attorneys' Fees. According to the Supplemental Declaration of Justin Goldstein, Defendants incurred $21,974 in connection with this Motion for Attorneys' Fees, which includes both preparation of the Motion for Attorneys' Fees and efforts to avoid having to file such a motion. Suppl. Decl. of Justin M. Goldstein ("Goldstein Suppl. Decl.") ¶¶ 3-5, ECF No. 46. Along with his Supplemental Declaration, Mr. Goldstein included the specific billing entries related to the Motion for Attorneys' Fees. Id., Ex. A.

It is not entirely clear that fees incurred in preparation of a motion for attorneys' fees are available under the Copyright Act. See Shame on You Prods., 2016 WL 5929245, at *18; Identity Arts v. Best Buy Enterp. Servs. Inc., No. C 05-4656 PJH, 2008 WL 820674, at *8 (N.D. Cal. Mar. 26, 2008)("While other federal statutes—e.g., 42 U.S.C. § 1988 [and] 28 U.S.C. § 2412—have been construed to permit the recovery of fees upon fees, Defendants have not submitted any controlling authority regarding the availability of fees upon fees vis-a-vis the Copyright Act specifically."). As noted in Identity Arts, the Ninth Circuit has allowed for recovery of fees incurred in

17

connection with a motion for attorneys' fees under 42 U.S.C. § 1988. 2008 WL 820674, at *8; see In re Nucorp Energy, Inc., 764 F.2d 655, 660 (9th Cir. 1985). The Ninth Circuit noted that 42 U.S.C. § 1988 is "a fee and cost provision similar in form to" 17 U.S.C § 505, the provision through which Defendants seek to recover their fees. Twentieth Century Fox Film Corp., 429 F.3d at 884. Therefore, because the two statutes are similar in form, it follows that if fees incurred in connection with a motion for attorneys' fees are recoverable under 42 U.S.C. § 1988, they would also be recoverable under 17 U.S.C § 505.

Further, unlike the facts in Shame on You Productions and Identity Arts, here, Defendants have provided an explanation for why the fees incurred in preparing the Motion for Attorneys' Fees were reasonably necessary and detailed billing entries along with a supplemental declaration explaining these entries. See Goldstein Suppl. Decl., Ex. A. Defendants gave Plaintiff multiple opportunities to avoid having to pay defense counsel's fees, but Plaintiff refused to reasonably engage in communications with defense counsel. Defense counsel even drafted an agreement regarding forgoing seeking a fee award after Plaintiff assented to such an agreement, but Plaintiff then reneged on this agreement and made a six-figure settlement demand instead. Accordingly, the Court finds that the 54.1 hours

expended in connection with the instant Motion for Attorneys' Fees, resulting in a total of $21,974 in fees, were reasonably expended and thus recoverable.

In light of the reasonableness of the fees requested and Plaintiff's failure to oppose Defendants' Motion for Attorneys' Fees, the Court awards Defendants the $101,916 in attorneys' fees they request.

### 3. Recoverability of Costs

"Section 505 allows the court in its discretion to award 'full costs.'" Identity Arts, 2008 WL 820674, at *9 (citing 17 U.S.C. § 505). Defendants seek to recover $792.22 in costs, which includes courier costs and the costs of obtaining and making copies of DVDs of *Black-ish*. Goldstein Decl. ¶ 50. After reviewing the billing invoices for these costs, the Court finds that the courier costs are reasonable. However, defense counsel has not explained why Defendants should recover the $481.86 spent obtaining and copying DVDs of *Black-ish*. Defense counsel should have been able to obtain these DVDs from their clients, the creators and producers of *Black-ish*, at no cost. See Duckhole, 2013 WL 5797204, at *17 (declining to award costs incurred in obtaining copies of DVD, which defense counsel could have obtained from client). Accordingly, the Court awards the requested courier costs of $310.36 but declines to award the $481.86 cost of the *Black-ish* DVDs.

///

## III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion for Attorneys' Fees [45]. The Court awards Defendants' $101,916 in attorneys' fees and $310.36 in costs, for a total award of $102,226.36. **IT IS SO ORDERED.**

DATED: November 20, 2017        s/ RONALD S.W. LEW

                                                 **HONORABLE RONALD S.W. LEW**
                                                 Senior U.S. District Judge